[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner filed its amended presentment of attorney for misconduct dated March 15, 1995. The respondent is charged with the following violations of the Rules of Professional Conduct:
 (1) The respondent failed to file an Attorney Registration Form as required by the Connecticut Practice Book for the year 1993 until the date of the hearing before a reviewing committee of the Statewide Grievance Committee on January 12, 1994.
 (2) Respondent deposited a check into his personal account which was given to him for the benefit of a client.
 (3) The respondent's conduct, as hereinbefore set forth, violated Rules 1.15(a) and (b) and Rule 8.4(c) of the Rules of Professional Conduct.
The underlying facts in the case are set forth in a Stipulation of Facts dated May 25, 1995 and admitted as a court exhibit.
Substantive portions of that Stipulation of Facts reads as follows:
 "1) Frederick D. Ross, Jr., (hereinafter, `Respondent') Juris No. 051480, was admitted as a member of the Bar of the State of Connecticut on or about September 12, 1972.
 2) The Respondent failed to file an Attorney Registration Form, as required by the Connecticut Practice Book, for the year 1993, until the date of the hearing before a reviewing committee of the Statewide Grievance Committee on January 12, 1994.
 3) In or about July of 1992, the Respondent retained Frank N. Mona to perform a real estate appraisal in connection with the Estate of Hilda Isabel Wilkinson, which the Respondent was probating.
4) The appraisal was completed on or about July 29, 1992.
 5) Frank N. Mona delivered the appraisal and a bill for his services to Kenneth T. Wilkinson, administrator of the Estate of Hilda Isabel Wilkinson.
 6) Subsequent to the receipt of the appraisal and the bill, Kenneth T. Wilkinson gave the Respondent a check, made payable to the CT Page 733 Respondent, in the amount of three hundred dollars ($300.00), for the Respondent to pay the said Frank N. Mona for performing the appraisal.
 7) The Respondent deposited the check into his personal account, and did not pay the said Frank N. Mona until after Frank N. Mona had filed a grievance complaint."
The court finds the facts in accordance with the stipulation of the parties.
The court finds that the respondent has been the subject of three previous disciplinary proceedings. By judgment dated November 7, 1984, the Honorable Samuel S. Freedman adjudged that the respondent be suspended from the practice of law for a period of 90 days from November 7, 1984 until February 6, 1985, and further be ordered to pay Joseph and Evelyn Ribbon the sum of $700.00.
The Ribbons had retained Attorney Ross in January of 1979 to represent them in an appeal from a decision of the Liquor Control Commission and a related zoning matter. They had paid Attorney Ross a retainer of $700.00. Attorney Ross told his clients that he had filed a complaint with the Superior Court and the Liquor Control Commission. When the clients checked with the Superior Court in Hartford, they were informed that their case had not been filed with the court. Attorney Ross appears to have taken no action on the zoning matter in spite of persistent urging from his client. Attorney Ross's check to the Zoning Board of Appeals to cover a filing fee for a hearing was returned for insufficient funds and a June hearing was cancelled. Eventually, in May of 1980, the clients received a letter from the Zoning Enforcing Officer which concluded: "After a lengthy study of your file, time for appeal from the order of decision of the Zoning Enforcement Officer has expired."
In the second matter concerning Attorney Ross, the Honorable Ronald J. Fracasse, by judgment dated March 16, 1986, adjudged that Frederick D. Ross be suspended from the practice of law in the State of Connecticut for a definite period of time from July 19, 1985 to end on midnight June 30, 1986 and ordered to pay to the Reverend Felix J. McGuire the sum of $1000.00 before June 30, 1986.
The court recognizes that in the McGuire case there was a CT Page 734 petition for a new trial based upon after-discovered evidence which may have had some merit if it had been pursued, but it was never pursued by Mr. Ross. Accordingly, the court acts in accordance with the facts that were originally before Judge Fracasse. In essence, that complaint stated that the Reverend McGuire agreed to buy a condominium unit in West Haven from one Daniel Nolan whom Mr. Ross represented. Mr. Ross suggested to Reverend McGuire that a deposit check be made out, not to Mr. Nolan, who was on the verge of bankruptcy, but to Mr. Ross for placement in his escrow account. In accordance with this advice, $1000.00 was placed in the escrow account. When the proposed sale fell through, apparently because of the disapproval by the Superior Court of a foreclosure by sale, Reverend McGuire demanded the return of his $1000.00. Reverend McGuire filed the grievance when the money was not returned.
In September of 1993, the Statewide Grievance Committee found that the respondent, on or about May 4, 1992, had received a divorce retainer in the amount of $750.00 to pursue an uncontested divorce. The Committee found that the respondent subsequently failed to serve the complainant's husband or file a writ, summons and complaint. The request by the complainant in that matter that the respondent provide her new counsel with her file went unanswered. Respondent failed to return telephone calls to the complainant. Respondent failed to provide complainant with any documentation evidencing any work performed by him on her behalf.
The court notes that numerous letters were presented in support of the respondent Frederick Ross. The court believes that no purpose would be served by identifying by name those attorneys who wrote in support of the respondent. The court does note that his supporters included a former president of the Connecticut Bar Association, a president of the New Haven County Bar Association, and a former Attorney General of the State of Connecticut.
Several of the letters made reference to domestic problems which occurred in the early 1980's.
The court quotes from one letter as representative of the letters received. That letter read:
 "Rick encountered some unfortunate domestic problems in the early 1980s. I know the problems that he encountered during his divorce spilled over into his law practice and CT Page 735 were probably the main reasons for the difficulties he previously encountered.
 I would hope that the court would balance the special circumstances which gave rise to Rick's problems in the past with the compassion, honesty and trustworthiness he has consistently shown to his clients and fellow attorneys over the years in deciding the case before you."
There also is some indication, based on medical records which were admitted as Defendant's Exhibit 8, that Mr. Ross has a medical problem which may be serious and perhaps life-threatening.
In arriving at an appropriate sanction the court finds it useful to consider the standards for imposing sanctions adopted by the American Bar Association in 1986 and amended in February 1992.
Those standards provide the following:
(1) What ethical duty did the lawyer violate?
(2) What was the lawyer's mental state?
(3) What was the actual potential injury caused by the lawyer's misconduct?
(4) Are there aggravating or mitigating circumstances?
In the present case the respondent violated his ethical duty to his client, to the public and to the legal system. The respondent acted negligently, perhaps knowingly, but it is unclear both in the failure to register and the failure to segregate the $300.00 whether he acted deliberately. It appears probable that the suspensions in 1984 and 1985 may, to some extent, have been affected by his mental state growing out of domestic difficulties. However, that mental state would not appear to affect the actions leading to his reprimand in 1993, nor does the domestic situation appear to affect or in any manner excuse the present failure to segregate funds.
Aggravating factors would appear to be a rather steady pattern of failure to live up to the high standards expected of members of the Bar. The respondent had a suspension in 1984, a suspension in 1985, a reprimand in 1992, a failure to register in CT Page 736 1993 and a failure to segregate or protect clients' funds some time after July 29, 1992. A mitigating circumstance in the respondent's favor would appear to be his personal domestic problems. Nevertheless, he had a professional obligation to discharge his professional responsibilities notwithstanding his personal domestic problems.
The court finds the support of the respondent's colleagues, and the reputation of the colleagues who supported him, to be significant in his favor. Finally, although the respondent's physical condition is not directly mitigating, it does appear that it appropriately has some bearing on the court's decision.
No matter how well intentioned the respondent was, the court cannot sanction a failure to protect clients' funds. The court believes that a failure to protect clients' funds and to honor escrow instructions poses a threat to many of the prerogatives presently enjoyed by attorneys. Attorneys for the most part handle clients' funds free from bonding requirements or supervision. While the amount of money involved in the present matter is relatively small, the principle is exceedingly large. The respondent's action not only harms individual clients but the public, the legal system and the legal profession.
The respondent is, accordingly, suspended from the practice of law for a period of five (5) years, commencing January 15, 1996 and ending January 14, 2001. THE COURT
THE COURT
BY: KEVIN E. BOOTH, JUDGE